**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANGELA N. MOTT,

Plaintiff,

v. CASE NO.:

CENTENE MANAGEMENT COMPANY LLC,

Defendant.

________________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANGELA N. MOTT, (hereinafter "Plaintiff" or "Ms. Mott"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, CENTENE MANAGEMENT COMPANY LLC (hereinafter "Defendant," "Centene," or "Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on race and disability, retaliation, and interference with and retaliation for the exercise of protected leave rights, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its

implementing Regulations; the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.; the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601 et seq.; Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"); and the Florida Private Whistleblower Act, § 448.102, Florida Statutes ("FPWA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her race and disability, retaliated against her for engaging in protected activity, and interfered with and retaliated against her for the exercise of her rights under the FMLA, in violation of her rights under Title VII, the ADA, the FMLA, the FCRA, and the FPWA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. Plaintiff resides in Pasco County, Florida.

## PARTIES

8. Plaintiff, ANGELA N. MOTT, is a 46-year-old Black female who resides in Pasco County, Florida.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her race and disability under Title VII, the ADA, and the FCRA.

10. During the period from on or about February 18, 2019, until on or about October 1, 2025, Defendant employed Plaintiff, most recently as a Corporate Health Equity and Department of Health Project Manager II.

11. At all times material herein, Plaintiff met the definitions of “employee” and “eligible employee” under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII, the ADA, the FMLA, the FCRA, and the FPWA.

13. The Defendant, CENTENE MANAGEMENT COMPANY LLC, is a limited liability company with its principal place of business located at 7700 Forsyth Blvd., St. Louis, Missouri 63105.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout the State of Florida, where it employed Plaintiff.

15. At all times material herein, Defendant employed more than five hundred (500) employees and met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, Title VII, the ADA, the FMLA, the FCRA, and the FPWA.

16. Accordingly, Defendant is liable under Title VII, the ADA, the FMLA, the FCRA, and the FPWA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant, EEOC Charge No. 511-2026-04253, alleging, among other things, race

discrimination, disability discrimination, retaliation, and interference with and retaliation for the exercise of her rights under the FMLA.

19. On August 3, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to her Charge of Discrimination against Defendant.

20. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

21. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22. Plaintiff, Angela N. Mott, is a 46-year-old Black female.

23. On or about February 18, 2019, Defendant hired Plaintiff as a Care Manager. Between 2019 and 2023, Plaintiff was promoted two times across the Company.

24. In or about April 2023, Plaintiff accepted a position as a Corporate Health Equity and Department of Health Project Manager II, in which capacity she served as a project manager for Defendant's national health equity initiatives.

25. Plaintiff remained employed by Defendant for approximately six and one-half years, during which she performed her duties competently, diligently, and professionally, and without any meaningful disciplinary record, as documented in her corporate employee reviews.

26. Plaintiff suffers from a serious medical condition that constitutes a disability, or that Defendant perceived as a disability, within the meaning of the ADA and the FCRA, and that required her to seek leave under the FMLA and to file a claim for short-term disability benefits.

27. In or around September and October 2024, several months before the events described below, Plaintiff's direct supervisor, Aviva Woog (Bi-racial/Female), Director of Health Equity ("Woog"), actively encouraged and recommended Plaintiff for positions on other teams within the Company, including by making direct introductions on Plaintiff's behalf, endorsing Plaintiff to the hiring managers, and following up with Plaintiff on the status of her applications. Ms. Woog's contemporaneous recommendations reflected her confidence in Plaintiff's abilities and are directly inconsistent with the performance deficiencies Ms. Woog later asserted as the basis for the disciplinary actions described below.

28. In or around February or March 2025, Plaintiff was asked to attend a meeting with Abby Eppenberger (White/Female), a Health Equity Manager and Plaintiff's former manager, and Ms. Woog. During the meeting, Ms. Eppenberger presented a near-final version of a process document that Plaintiff had originally drafted in October 2024 to be completed in collaboration with Ms. Eppenberger. The document included a checklist of observations regarding Plaintiff's work-related tasks, including evaluative comments.

29. Plaintiff expressed concern that she had been excluded from finalizing a process document she had created, particularly because no negative feedback had previously been communicated to her during recurring weekly team calls and one-on-one meetings with Ms. Eppenberger and Ms. Woog. Plaintiff requested that the observations be removed from the shared process document and placed in a separate document, and expressed her concern that the meeting seemed punitive in nature.

30. Directly following the meeting, Plaintiff contacted Defendant's Employee Relations department sharing her concerns about disparate treatment, including but not limited to management observing her without her knowledge and documenting those observations on a shared team

document. Prior to this incident, Plaintiff had expressed concerns to both Ms. Eppenberger and Haleta Belai (Black/Female), Plaintiff's Vice President and Ms. Woog's direct supervisor, about consistent miscommunication and contradictory feedback that negatively impacted her project management.

31. In that same initial conversation with Employee Relations, Plaintiff also reported what she reasonably believed to be unfair hiring practices on her team. Specifically, Plaintiff reported that Ms. Belai, the Vice President, at times announced new team members during team meetings for positions that had not been posted or announced as open to the existing team, leaving current team members with no opportunity to be considered for advancement. Plaintiff raised this concern because she believed there was no room to move up on the team when existing team members were not even notified of openings.

32. The Employee Relations representative opened a case and assigned it to Eric Judd, an Employee Relations advisor, who advised that leadership could not place an employee on a performance improvement plan without first communicating concerns, offering coaching, or providing an opportunity to improve. Mr. Judd asked Plaintiff to send supporting documentation and stated that a subsequent investigation would take place.

33. Consistent with Defendant's practice, when an employee submits a concern about a leader, the leader is notified of the complaint. Plaintiff's complaints regarding her leadership were therefore made known to the very supervisors whose conduct she had reported, which contributed to the acceleration of the adverse actions described below.

34. In or around May 2025, Ms. Woog scheduled a call with Plaintiff separate from their weekly one-on-one meetings. During this call, Ms. Woog stated that there had been prior conversations, to which Plaintiff was not a party, about Plaintiff's performance, and suggested that Plaintiff "just quit." Plaintiff responded that she was not in a financial position to quit her job and wanted to keep her job. Plaintiff again contacted Employee Relations, which stated that a ticket would be opened and followed by an investigation.

35. A "Leadership Investigation Ticket" was opened, and Ms. Woog was notified of Plaintiff's complaint.

36. Shortly thereafter, in or about June 2025, Ms. Woog placed Plaintiff on a Performance Improvement Plan ("PIP"). The stated basis for the PIP was an alleged "lack of attention to detail," a pretextual rationale directly contradicted by the documentary record.

37. Specifically, the PIP documentation incorporated written summary and recap emails that Ms. Woog submitted to Defendant's Employee Relations department, purportedly describing the content of one-on-one meetings between Ms. Woog and Plaintiff. However, the actual auto-generated transcripts of those same meetings directly and materially contradict Ms. Woog's written representations to Employee Relations.

38. Plaintiff became aware of this discrepancy, preserved both the meeting transcripts and Ms. Woog's contradicting Employee Relations submissions, and reported the discrepancy to Employee Relations. Plaintiff also reported and submitted examples of other team members who were not scrutinized for similar reasons.

39. Upon information and belief, non-Black employees were not subjected to performance improvement plans built upon falsified supervisor submissions and were not similarly pressured to leave the organization.

40. Ms. Woog also failed to comply with Defendant's own PIP protocols. On the initial PIP attempt, Ms. Woog failed to provide the required feedback to Plaintiff. Rather than invalidating the PIP on account of Ms. Woog's non-compliance, Defendant extended the PIP. Ms. Woog again failed to provide the required weekly feedback during the extension

period, and Defendant again extended the PIP, a standard wholly inconsistent with the strict compliance demanded of Plaintiff throughout her employment.

41. Plaintiff appealed the PIP through Defendant's internal process on two separate occasions. Both appeals were assigned to reviewers within the same Employee Relations reporting chain, presenting an unresolved conflict of interest. Neither appeal resulted in any disciplinary action against Ms. Woog, any correction of her false Employee Relations submissions, or any substantive relief for Plaintiff. Both appeals concluded, without meaningful investigation, that "both the leader and the employee have opportunities for clarity in communication," a finding unsupported by the documentary evidence Plaintiff submitted.

42. Throughout this period, after Plaintiff began making complaints, Ms. Woog and members of Defendant's management made explicit, documented statements pressuring Plaintiff to resign. Ms. Woog directly asked Plaintiff whether she could "just quit." A Vice President employed by Defendant referenced Plaintiff completing "transitional templates," language presupposing her departure. When Plaintiff raised concerns about the hostile and psychologically unsafe conditions of her

workplace, Defendant responded that she could either take personal leave or "choose her own way of leaving the company." Plaintiff reported all of this conduct to Employee Relations, which took no meaningful corrective action.

43. On or about September 22, 2025, Plaintiff filed for FMLA leave and short-term disability benefits through Defendant's third-party leave administrator, Lincoln Financial (Leave ID No. 17891810 / Disability Claim No. 17891809), with leave requested to commence September 27, 2025. At the time of filing, Plaintiff had 480 hours of FMLA leave remaining within her applicable twelve-month period. Lincoln Financial confirmed receipt of the claim in writing the same day.

44. Under Defendant's leave practice, an eligible employee is permitted to initiate and begin FMLA leave immediately upon submission of the request, with the request held in a pending status for a period of approximately fifteen (15) days to allow for submission of supporting medical documentation. Plaintiff was accordingly eligible to begin her leave on the day she submitted her request. Rather than commence her leave immediately, Plaintiff requested a later start date of September 27, 2025, so that she could properly situate her ongoing work and communicate directly

with Ms. Woog, who was out of the office on paid time off when Plaintiff submitted her request.

45. In addition to the notice provided to Defendant by Lincoln Financial, Plaintiff notified Ms. Woog by email of her leave and her intended start date, together with a detailed summary of her outstanding projects and transition items. Ms. Woog responded to and acknowledged Plaintiff's email. Ms. Woog was also notified by Lincoln Financial of the leave request on or around September 23, 2025.

46. On or about September 25, 2025, shortly after acknowledging Plaintiff's leave email and only days after Plaintiff's leave request was submitted and approved, Plaintiff was called to a meeting by Ms. Woog, at which Ms. Belai, Ms. Woog's direct supervisor, was also present. Plaintiff was informed in this meeting that her employment was being terminated because the Company "had not seen any improvement," a statement that directly contradicted Ms. Woog's own emailed communications to Plaintiff. Plaintiff was instructed to immediately log off of her Centene-issued laptop and systems and not to log back in.

47. Just nine (9) days after Plaintiff filed for FMLA and disability leave, Defendant issued a Separation Agreement and General Release

bearing a stated termination date of October 1, 2025, and subsequently issued an updated Separation Agreement. In exchange for a global release of all legal claims, Defendant offered Plaintiff only two (2) weeks of base pay as severance, consideration grossly disproportionate to her nearly seven years of service, her documented record of performance, and the scope of the legal claims arising from Defendant's conduct.

48. The temporal proximity between Plaintiff's protected FMLA filing and Defendant's presentment of a termination agreement is not coincidental.

49. Defendant's stated reason for the adverse employment actions taken against Plaintiff, a “lack of attention to detail,” is pretextual. The documentary record, including the actual transcripts of Plaintiff's meetings with Ms. Woog as compared to Ms. Woog's Employee Relations submissions, demonstrates that the stated performance concerns were fabricated. There is no legitimate, non-discriminatory, non-retaliatory business reason for the PIP, the denial of Plaintiff's appeals, the repeated pressure to resign, or the September and October 2025 separation.

50. Additionally, Defendant filed a false record with the Florida unemployment office stating that Plaintiff's termination was due to

"misconduct." This false record resulted in a five-month denial of benefits and required an appeal hearing for Plaintiff to receive her unemployment benefits. The determination to reinstate Plaintiff's unemployment benefits was made after a hearing during which Centene was contacted and did not appear after two outreach attempts by the appeals officer. The submission of the false record is a further demonstration of fabrication by Defendant.

51. Defendant's conduct was motivated, in whole or in part, by Plaintiff's race, her disability, her FMLA filing, and her protected complaints, individually and in combination.

52. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered significant damages, including but not limited to lost wages, lost benefits, lost future earning capacity, emotional distress, mental anguish, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has been unable to secure comparable replacement employment despite a diligent and sustained job search, a search materially hampered by Defendant's position that she is not eligible for rehire. The financial consequences have been severe, including the loss of her vehicle and damage to her credit.

## COUNT I
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## Interference
## 29 U.S.C. § 2615(a)(1)

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54. At all times material hereto, Defendant was an employer within the meaning of the FMLA.

55. At all times material hereto, Plaintiff was an eligible employee within the meaning of the FMLA.

56. Plaintiff was employed by Defendant for at least twelve months and worked at least 1,250 hours during the twelve months preceding her FMLA leave request.

57. Plaintiff was entitled to leave under the FMLA because she suffered from a serious health condition.

58. On or about September 22, 2025, Plaintiff requested FMLA leave through Defendant's third-party leave administrator, Lincoln Financial, with leave requested to commence September 27, 2025, and had 480 hours of FMLA leave remaining within her applicable twelve-month period. Consistent with Defendant's leave practice, Plaintiff was eligible to

begin her leave immediately upon submission of her request, which was held in a pending status to allow for submission of supporting medical documentation.

59. Plaintiff exercised, or attempted to exercise, rights protected by the FMLA by requesting and applying for FMLA leave, by notifying Ms. Woog of her leave and intended start date by email, and by arranging to commence her leave on September 27, 2025.

60. Defendant interfered with, restrained, and/or denied the exercise of Plaintiff's rights under the FMLA.

61. Among other things, Defendant terminated Plaintiff's employment while her FMLA and disability claim was actively pending before Lincoln Financial and before her requested leave was to commence, thereby depriving Plaintiff of leave to which she was statutorily entitled and of the benefits, compensation, and employment conditions she otherwise would have received.

62. Defendant's conduct violated Plaintiff's rights under the FMLA.

63. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has suffered damages, including lost

wages, salary, employment benefits, and other compensation, together with interest and other relief available under the FMLA.

64. Defendant's violations were not in good faith, and Plaintiff is therefore entitled to liquidated damages to the fullest extent permitted by law.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and requests all relief available under the FMLA, including damages for lost wages, salary, benefits, and other compensation, interest, liquidated damages, equitable relief including reinstatement or front pay as appropriate, attorneys' fees, costs, and such further relief as the Court deems just and proper, and demands trial by jury on all issues so triable.

**COUNT II**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**Retaliation**
**29 U.S.C. § 2615(a)(2)**

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

66. At all times material hereto, Defendant was an employer within the meaning of the FMLA.

67. At all times material hereto, Plaintiff was an eligible employee within the meaning of the FMLA.

68. Plaintiff engaged in protected activity under the FMLA by requesting and applying for FMLA leave on or about September 22, 2025, and by notifying Ms. Woog of her leave and intended start date.

69. Defendant knew that Plaintiff engaged in protected activity under the FMLA, including through the notice Plaintiff provided to Ms. Woog by email and the notice provided to Defendant by Lincoln Financial.

70. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including informing her on or about September 25, 2025, that her employment was being terminated and issuing a Separation Agreement and General Release bearing a stated termination date of October 1, 2025.

71. A causal connection exists between Plaintiff's exercise of her FMLA rights and Defendant's materially adverse actions, as evidenced by the close temporal proximity between Plaintiff's FMLA filing on September 22, 2025, and Defendant's tender of a termination agreement only nine days later.

72. Defendant retaliated against Plaintiff because she exercised rights protected by the FMLA.

73. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, together with interest and other relief available under the FMLA.

74. Defendant's violations were not in good faith, and Plaintiff is therefore entitled to liquidated damages to the fullest extent permitted by law.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and requests all relief available under the FMLA, including damages for lost wages, salary, benefits, and other compensation, interest, liquidated damages, equitable relief including reinstatement or front pay as appropriate, attorneys' fees, costs, and such further relief as the Court deems just and proper, and demands trial by jury on all issues so triable.

## COUNT III
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## Race Discrimination
## 42 U.S.C. § 2000e et seq.

75. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

76. Plaintiff is a Black female and is a member of a protected class under Title VII.

77. At all times material hereto, Defendant was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

78. At all times material hereto, Plaintiff was qualified for the position she held and performed her job duties in a satisfactory or above-satisfactory manner.

79. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of her race.

80. Among other things, Defendant placed Plaintiff on a Performance Improvement Plan built upon falsified supervisor submissions, denied Plaintiff a fair appeals process, repeatedly pressured Plaintiff to resign, and ultimately terminated her employment.

81. Similarly situated non-Black employees were not subjected to performance improvement plans built upon falsified supervisor submissions, were not similarly pressured to leave the organization, and were not subjected to comparable treatment.

82. Defendant's stated reason for the adverse employment actions taken against Plaintiff, a "lack of attention to detail," was false, pretextual, and/or not the real reason for its actions, and is contradicted by Defendant's own documentary record.

83. Plaintiff's race was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

84. Defendant's conduct materially altered the terms, conditions, and privileges of Plaintiff's employment and constituted unlawful discrimination because of Plaintiff's race in violation of Title VII.

85. As a direct and proximate result of Defendant's unlawful race discrimination, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and respectfully requests that this Court:

A. Declare that Defendant violated Title VII by discriminating against Plaintiff because of her race;

B. Award Plaintiff back pay, front pay, lost benefits, and other economic damages available under Title VII;

C. Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D. Award Plaintiff punitive damages as permitted by law;

E. Award Plaintiff pre-judgment and post-judgment interest;

F. Award Plaintiff reasonable attorneys' fees and costs; and

G. Grant such other and further relief as this Court deems just and proper.

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**Retaliation**
**42 U.S.C. § 2000e-3(a)**

86. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

87. At all times material hereto, Defendant was an employer within the meaning of Title VII.

88. Title VII prohibits an employer from retaliating against an employee because the employee opposed an employment practice made unlawful by Title VII or because the employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

89. Plaintiff engaged in protected activity under Title VII by making good-faith internal complaints to Defendant's Employee Relations department regarding disparate treatment and conduct she reasonably believed to be unlawful discrimination.

90. Defendant was aware of Plaintiff's protected activity.

91. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including placing Plaintiff

on a Performance Improvement Plan, denying her appeals, repeatedly pressuring her to resign, and terminating her employment.

92. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

93. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, as evidenced by the temporal proximity and pattern of escalating conduct following Plaintiff's complaints.

94. Defendant's stated reasons for its actions were false, pretextual, and/or retaliatory.

95. Defendant retaliated against Plaintiff for engaging in protected activity in violation of Title VII.

96. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and respectfully requests that this Court:

A. Declare that Defendant violated Title VII by retaliating against Plaintiff for engaging in protected activity;

B. Award Plaintiff back pay, front pay, lost benefits, and other economic damages available under Title VII;

C. Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D. Award Plaintiff punitive damages as permitted by law;

E. Award Plaintiff pre-judgment and post-judgment interest;

F. Award Plaintiff reasonable attorneys' fees and costs; and

G. Grant such other and further relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Disability Discrimination and Failure to Accommodate
## 42 U.S.C. §§ 12101-12213

97. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

98. Plaintiff has a serious medical condition that constitutes a disability within the meaning of the ADA because it substantially limits one

or more major life activities, and/or Defendant regarded Plaintiff as having such a disability.

99. At all times material hereto, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position, with or without reasonable accommodation.

100. At all times material hereto, Defendant was an employer within the meaning of the ADA.

101. Defendant knew of Plaintiff's disability and disability-related need for leave and accommodation, including through Plaintiff's request for FMLA leave and her claim for short-term disability benefits.

102. Rather than engage in the interactive process or reasonably accommodate Plaintiff upon her request for protected leave, Defendant terminated Plaintiff's employment while her FMLA and disability claim was actively pending before Lincoln Financial.

103. Defendant treated Plaintiff less favorably than similarly situated non-disabled employees and subjected Plaintiff to adverse employment actions, including termination, under circumstances giving rise to a reasonable inference that Defendant discriminated against Plaintiff because of her disability.

104. Defendant thereby discriminated against Plaintiff because of her disability in the terms, conditions, and privileges of employment, and failed to provide a reasonable accommodation, in violation of the ADA.

105. As a direct and proximate result of Defendant's disability discrimination and failure to accommodate, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, punitive damages as permitted by law, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper, and demands trial by jury on all issues so triable.

## COUNT VI
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## Retaliation
## 42 U.S.C. § 12203

106. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

107. At all times material hereto, Defendant was an employer within the meaning of the ADA.

108. Plaintiff engaged in protected activity under the ADA by, among other things, requesting and applying for disability-related leave and a reasonable accommodation for her disability.

109. Defendant knew about Plaintiff's protected activity.

110. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including terminating her employment while her disability claim was actively pending.

111. Defendant's actions would dissuade a reasonable employee from requesting accommodation or opposing disability discrimination.

112. The adverse actions taken against Plaintiff were causally related to her protected activity, as evidenced by the close temporal proximity between Plaintiff's request for disability-related leave and her termination.

113. Defendant retaliated against Plaintiff because she exercised rights protected by the ADA.

114. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages, including lost wages, lost benefits, lost earning

capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, punitive damages as permitted by law, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper, and demands trial by jury on all issues so triable.

## COUNT VII
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Race Discrimination
### § 760.10, Florida Statutes

115. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

116. Plaintiff is a Black female and is a member of a protected class under the Florida Civil Rights Act, §§ 760.01-760.11, Florida Statutes.

117. At all times material hereto, Defendant was an employer within the meaning of the FCRA.

118. At all times material hereto, Plaintiff was qualified for the position she held and performed her job duties in a satisfactory or above-satisfactory manner.

119. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of her race, including placing Plaintiff on a Performance Improvement Plan built upon falsified supervisor submissions, denying Plaintiff a fair appeals process, repeatedly pressuring Plaintiff to resign, and ultimately terminating her employment.

120. Similarly situated non-Black employees were treated more favorably than Plaintiff and were not subjected to comparable treatment.

121. Defendant's stated reason for the adverse employment actions taken against Plaintiff was false, pretextual, and/or not the real reason for its actions.

122. Plaintiff's race was a motivating factor in Defendant's decision to subject Plaintiff to different terms and conditions of employment and to terminate her employment.

123. Defendant discriminated against Plaintiff because of her race in violation of the FCRA.

124. As a direct and proximate result of Defendant's unlawful race discrimination, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and respectfully requests that this Court:

A. Declare that Defendant violated the FCRA by discriminating against Plaintiff because of her race;

B. Award Plaintiff back pay, front pay, lost benefits, and other economic damages available under the FCRA;

C. Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D. Award Plaintiff pre-judgment and post-judgment interest;

E. Award Plaintiff reasonable attorneys' fees and costs; and

F. Grant such other and further relief as this Court deems just and proper.

## COUNT VIII
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Disability Discrimination
### § 760.10, Florida Statutes

125. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

126. Plaintiff has a serious medical condition that constitutes a handicap or disability within the meaning of the FCRA, or that Defendant perceived as such a disability.

127. At all times material hereto, Defendant was an employer within the meaning of the FCRA.

128. At all times material hereto, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

129. Defendant knew of Plaintiff's disability and disability-related need for leave and accommodation, including through Plaintiff's request for FMLA leave and her claim for short-term disability benefits.

130. Rather than engage in the interactive process or reasonably accommodate Plaintiff upon her request for protected leave, Defendant

terminated Plaintiff's employment while her FMLA and disability claim was actively pending before Lincoln Financial.

131. Defendant thereby discriminated against Plaintiff because of her disability in the terms, conditions, and privileges of employment, in violation of the FCRA.

132. As a direct and proximate result of Defendant's disability discrimination, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and respectfully requests that this Court:

A. Declare that Defendant violated the FCRA by discriminating against Plaintiff because of her disability;

B. Award Plaintiff back pay, front pay, lost benefits, and other economic damages available under the FCRA;

C. Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D. Award Plaintiff pre-judgment and post-judgment interest;

E. Award Plaintiff reasonable attorneys' fees and costs; and

F. Grant such other and further relief as this Court deems just and proper.

## COUNT IX
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## Retaliation
## § 760.10(7), Florida Statutes

133. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

134. At all times material hereto, Defendant was an employer within the meaning of the FCRA.

135. The FCRA prohibits an employer from retaliating against an employee because the employee opposed an employment practice made unlawful by the FCRA or because the employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the FCRA.

136. Plaintiff engaged in protected activity under the FCRA by making good-faith internal complaints to Defendant's Employee Relations

department regarding disparate treatment and conduct she reasonably believed to be unlawful discrimination.

137. Defendant was aware of Plaintiff's protected activity.

138. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including placing Plaintiff on a Performance Improvement Plan, denying her appeals, repeatedly pressuring her to resign, and terminating her employment.

139. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

140. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, as evidenced by the temporal proximity and pattern of escalating conduct following Plaintiff's complaints.

141. Defendant's stated reasons for its actions were false, pretextual, and/or retaliatory.

142. Defendant retaliated against Plaintiff for engaging in protected activity in violation of the FCRA.

143. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including lost wages, lost benefits,

lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and respectfully requests that this Court:

A. Declare that Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B. Award Plaintiff back pay, front pay, lost benefits, and other economic damages available under the FCRA;

C. Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D. Award Plaintiff pre-judgment and post-judgment interest;

E. Award Plaintiff reasonable attorneys' fees and costs; and

F. Grant such other and further relief as this Court deems just and proper.

## COUNT X
## VIOLATION OF THE FLORIDA PRIVATE WHISTLEBLOWER ACT
## § 448.102, Florida Statutes

144. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52 of this Complaint as though fully set forth herein.

145. At all times material hereto, Defendant was an employer within the meaning of the Florida Private Whistleblower Act, § 448.101, Florida Statutes.

146. The FPWA, § 448.102(3), Florida Statutes, prohibits an employer from taking retaliatory personnel action against an employee because the employee objected to, or refused to participate in, any activity, policy, or practice of the employer that is in violation of a law, rule, or regulation.

147. Plaintiff engaged in protected activity under the FPWA by objecting to and reporting, in good faith and on an objectively reasonable basis, to Defendant's Employee Relations department that her supervisor, Ms. Woog, had falsified official Employee Relations records concerning Plaintiff's job performance.

148. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to a retaliatory personnel action, including terminating her employment.

149. A causal connection exists between Plaintiff's protected activity and the retaliatory personnel action taken against her.

150. Defendant's stated reasons for its actions were false and pretextual.

151. Defendant's retaliatory termination of Plaintiff violated § 448.102(3), Florida Statutes.

152. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

**WHEREFORE**, Plaintiff, ANGELA N. MOTT, demands judgment against Defendant, CENTENE MANAGEMENT COMPANY LLC, and respectfully requests that this Court:

A. Declare that Defendant violated the Florida Private Whistleblower Act by retaliating against Plaintiff for engaging in protected activity;

B. Award Plaintiff back pay, front pay or reinstatement, lost benefits, and other economic damages available under the FPWA;

C. Award Plaintiff compensatory damages, including damages for emotional distress, humiliation, mental anguish, and other nonpecuniary losses;

D. Award Plaintiff pre-judgment and post-judgment interest;

E. Award Plaintiff reasonable attorneys' fees and costs pursuant to § 448.104, Florida Statutes; and

F. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 31st day of October 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709

Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com
Attorneys for Plaintiff